IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARLIN-GOLF, LLC, an Illinois Limited Liability Corporation; RONALD POPP, as General Partner in the Popp-Valenti Partnership and President of Arlin-Golf LLC and Individually; VICTOR VALENTI, as General Partner in the Popp-Valenti Partnership and Vice-President of Arlin-Golf LLC and Individually, <br><br> Plaintiffs, <br><br> v. <br><br> THE VILLAGE OF ARLINGTON HEIGHTS, an Illinois Municipal Corporation; ARLENE J. MULDER, as Mayor of the Village and individually; WILLIAM V. ENRIGHT, as Village Planner and individually; BRIAN PROPERTIES, INC., an Illinois Corporation, and Individually; JACK B. WHISLER, as agent of the Village and D/B/A Brian Properties and Individually; VILLAGE BANK & TRUST, an Illinois Banking Corp. as agent of the Village and individually; and S. MICHAEL POLANSKI, Chairman and CEO of Village Bank & Trust, Arlington Heights, and as agent of Village of Arlington Heights and Individually, <br><br> Defendants, | No. 09 C 1907 <br><br> HONORABLE DAVID H. COAR |

**PLAINTIFFS' MOTION TO RECONSIDER AND VACATE FINAL JUDGMENT OF PREJUDICIAL DISMISSAL, TO REINSTATE ACTION AND ALLOW PLAINTIFF TO FILE AN AMENDED COMPLAINT, PURSUANT TO 42 U.S.C. R. Civ. P. 59, AS AMENDED JANUARY, 2009, 60(b), 14, 15(a)(1) AND AS OTHERWISE JUST AND PROPER**

NOW COME the Plaintiffs, ARLIN-GOLF, LLC, an Illinois Limited Liability Corporation; RONALD POPP, as General Partner in the Popp-Valenti Partnership and President of Arlin-Golf LLC and Individually; VICTOR VALENTI, as General Partner in the Popp-Valenti Partnership and Vice-President

of **Arlin-Golf LLC and Individually,** by and through their Counsel, **Joseph M. Williams,** who move this Court to reconsider and vacate it's final judgment of dismissal with prejudice, entered on or about March 9, 2010, pursuant to 20 U.S.C. R. Civ. P. 59, 60(b), 14 and 15(a)(1) to reinstate, to allow reinstatement of said cause, and to allow the filing of an amended complaint and in support thereof state the following:

### I. The Final Judgment Should be Vacated Upon Reconsideration as Erroneous, An Abuse Of This Court's Discretion And This Cause Should Be Subsequently Reinstated And Plaintiffs Given Leave To File An Amended Complaint

### A. This Court Erred And Abused It's Broad Discretion By Applying The Bar Of Res Judicata To The Plaintiffs' Action, Without Opportunity To Replead, To Plaintiffs' Prejudice.

1.) The Seventh Circuit Federal Court of Appeals has determined, pursuant to Illinois law, that res judicata applies where (1) there is a final judgment on the merits, (2) with an identity of parties or their privies and (3) identity of actions. In re Dollie's Playhouse, Inc. (7th Cir. 2007), 481 F. 3d 998, 1001, rehearing denied.

2.) The recent case of Piagentini v. Ford Motor Co. (2009), 387 Ill App. 3d 887, 901 N.E.2d 986, teaches that while res judicata is an equitable doctrine to prevent relitigation of the same case, equity equally dictates that the doctrine of res judicata is not to be technically applied if to do so would either create inequitable or unjust results or where it would be fundamentally unfair to do so, based upon fairness and justice, which should apply in this case. See Nowak v. St. Rita High School (2001), 197 Ill. 2d 381, 757 N.E. 2d 471, 477; Best Coin-op Inc. V. Paul F. ILG Supply Co. (1989), 189 Ill App. 3d 638, 545 N.E. 2d 481, 489.

3.) The res judicata doctrine is applied as public policy matter, to do equity, by avoiding the parties having their cake and eating it too, by later arguing they are not bound by an unfavorable judgment. In re Liquidation of Legion Indem. Corp. (2007), 373 Ill. App 3d

4.) In this case, as the municipal duress, along with the improper municipal use of it's far greater economic power than that of Defendants, forced <u>both</u> the sale of the shopping center at a depressed price as well as the <u>forced</u> dismissal of the lawsuit, both of which were done by overbearing the will of the Plaintiff's, as based upon the well pled facts and inferences of the complaint and its exhibits. (See exhibit T 4, complaint)

5.) A dismissal with prejudice upon merely the bare pleadings is a tortuous thing as stated in <u>Shull v. Pilot Life Ins. Co.</u> (5th Cir. 1963), 313 F. 2d 445, 447.

6.) Where issues are complex and facts uncertain, cases should be tried by the finder of fact, as opposed to being dismissed by application of public policy considerations. See <u>Misany v. U.S.</u> (7th Cir. 1989), 873 F. 2d 160, 164.

7.) A motion to dismiss upon the basis of 28 U.S.C., R. Civ. P. 12(b)(6), tests merely the sufficiency of the complaint, not the merits of the case. <u>Swiss Reinsurance America Corp. v. Access General Agency, Inc.</u> (N.D. Ill. 2008), 571 F. Supp. 2d 882, 884.

8.) Lack of detail or vagueness does not justify dismissal. <u>Estate Of Cassara By Cassara v. State of Ill.</u> (N.D. Ill. 1994), 853 F. Supp. 273, 276.

9.) Plaintiff need only nudge their pleading from conceivable to plausible to state a claim. <u>Bryant v. Gardner</u> (N.D. Ill. 2008), 545 F. Supp 2d 791, 797.

10.) To dismiss a complaint with prejudice, it must be beyond all doubt Plaintiff could <u>never</u> prove any state of facts in support of his claim upon which he could ever prevail, and, as noted in <u>Cler</u>, the trial court is not to read the plaintiff's complaint too narrowly to dismiss, which dismissal of the complaint was there reversed and remanded. <u>Cler v. Ill. Educ. Ass.</u> (7th Cir. 2005), 423 F. 3d. 726, 729-30, <u>In re Abbott Laboratories Securities Litigation</u> (N.D. Ill. 1992), 813 F. Supp. 1315, 1316-17.

11.) The Federal notice pleading standard provides for the generous reading of a complaint, in order to resist a motion to dismiss and need only contain sufficient facts to provide a defendant fair notice of the claim. In re African-American Slave Descendants Litigation (N.D. Ill. 2004), 304 F. Supp. 2d 1027, 1064 cert. denied 128 S. Ct. 92.

12.) Where a more carefully or fully drafted complaint might state a claim, as here, a dismissal without leave to amend is severely restricted by Federal procedural rules, so the Plaintiff must be given at least one chance to amend his complaint, before prejudicial dismissal; note this Court's statements that if authority was more generously provided as to extreme duress to remove the preclusive effect of the State Court settlement and, or that additional allegations of deprivation of a full and fair hearing in the prior case might have changed the result (see page 9, Opinion), therefore, as Plaintiffs intended to allege those assertions and can easily plead additional facts to demonstrate same, thus, they should be given that opportunity. Bank V. Pitt (11th Cir. 1991), 928 F. 2d 1108, 1111-1112, F.R. Civ. P. 15(a)(1).

13.) A party may seek relief from judgment and, if granted, seek to amend his complaint. See Vicom, Inc. v. Harbridge Merchant Services, Inc. (7th Cir. 1994), 20 F. 3d 771, 784.

14.) If judgment be vacated, and if allowed to amend, Plaintiff would plead additional facts which demonstrate they did not receive their day in court, they were denied due process, subject to severe duress and deprived of free will in prejudicially dismissing the case below as well as, in repleading, possibly removing the mayor as defendant in her individual capacity and also absent pled additional facis as her liability as to Enright in his individual capacity. See Peduto v. City Of North Wildwood (3d Cir. 1989), 878 F. 2d 725, 728. (Federal Court may refuse to afford preclusion effect to State Court

4

judgment as due process denied where denial of full and fair hearing in State Court implicates the violation of due process.)

15.) In summation, issues to be barred are to have been actually and fully litigated on the merits for preclusive effect, and, res judicata is to be "sparingly" applied, it appears to have been broadly and generously applied here, to Plaintiffs' loss, as they did not have their day in Court as the prior case was never litigated per se and the dismissal thereof was by duress pursuant to municipal threats to ruin Plaintiff's financially, and, thus, they were denied due process in all it's aspects. See Campbell v. Schneller (5th Cir. 2004), 109 F. Appx. 652, 2004 WL 1835999; Krison v. Nehls (7th Cir. 1985), 767 F.2d 344, 348; CompareTriester v. City Of Miami (S.D. Fla. 1992), 893 F. Supp. 1057 affirmed 56 F. 3d 1389, 14th Amendment, U.S. Constitution.

16.) As noted in Best Coin-Op, supra, 545 N.E. 2d at 489, a "taking," claim or claims in the nature of an eminent domain action at the State level for purposes of res judicata, wholly differ from violations of Federal civil rights of individuals, based upon 42 U.S.C. 1983, and the 14th Amendment, as noted in Best Coin-Op, supra, 545 N.E. 2d at 489.

**AI. Even If Res Judicata Was Properly Applied, This Court States In Its Opinion It Applied To All Claims Up To September, 2008; The Shopping Center Was Actually Sold In November, 2008, Approximately Two Months Later, For $950,000 Less Than The Market Value, A Later Loss Which Cannot Be Barred, As It Could Have Been Avoided, Absent Governmental Abuse Of its Delegated Authority.**

**A. The Present Case Is Not Based Upon The same Core Of Operative Facts As The Prior Action And, Thus, This Court Erred and Abused It's Discretion In Applying res judicata To The Present Case, To The Prejudice Of Plaintiffs Which Continued After The Prior Case Was Dismissed.**

1.) For the purposes of res judicata, the present claim must arise from the same core of operative facts as the earlier action, ie., based upon the same or nearly the same factual

allegations. <u>Kramer v. Stelter</u> (N.D. Ill.2008), 588 F. Supp. 2d 862, 868; <u>Black & Decker, Inc. v. Robert Bosch Tool Corp.</u> (N.D. Ill. 2007), 500 F. Supp. 2d 864, 868-69; See <u>In re Orseno</u> (N.D. Ill. 2008), 390 B.R. 350.

2.) The allegations of this case are wholly dissimilar from the prior case; the prior case was filed solely by the Plaintiff Limited Liability Corporation and sought solely a determination as to the validity of the TIF District No. 4. it's application and it's alleged improprieties as to the implementation as well as it's applicability as to the particular real property.; it had nothing to do with <u>purposeful</u> governmental discrimination, and misconduct, purposeful abuse of it's authority by it's own wrongful, illegal and unconstitutional actions and with use of third-party agents to hinder, threaten, abuse and damage plaintiffs, grievously.

3.) There was no claim in the earlier case the Village had no authority to pass a TIF District, only that it misapplied it; the claims here are based upon the total lack of Governmental authority to act as it acted, ie. to threaten, abuse and rob its citizens against their will; and to do so with a wholly malicious intent in a wholly disgraceful manner.

4.) The allegations in this case can in no way, shape or form be said to be identical or nearly identical to the prior pleadings, they are totally different, seeking different relief, for additional parties, against different parties.

5.) Further, even if <u>res judicata</u> applied until the September 2008, dismissal of the prior case, since approximately $1,000,000 (one million dollars) in damages may be said to have been incurred in November 2008, <u>after</u> the earlier case was dismissed, <u>res judicata</u> should not be applied to the later losses. See <u>American Nurses Ass. v. State Of Ill.</u> (7th Cir. 1990), 785 F. 2d 716, (valid claims in complaint not to be dismissed with invalid claims).

## C. This Court Erred And Abused Its Discretion In Holding Plaintiffs Did Not Allege That They Were Deprived Of A Full And Fair Opportunity To Litigate Their Claims In State Court, Without Granting Leave To Amend

1.) The State Court case was filed in 2006 and it was stated by the Village in Plaintiffs' "Exhibit T4", attached to the complaint, that prejudicial dismissal of Plaintiffs' prior complaint was required to enter the proposed sale agreement the Village later actually proffered, that letter was dated September 17, 200; The sales contract was signed and the sale closed in November, 2008, at which moment plaintiffs were significantly and monetarily damaged.

2.) Review of the complaint reveals substantial allegations of abuse, threats and duress of the Village and its agents, took place, in substantial measure, on or about September 22, 2008. (See p. 9, Complaint).

3.) Thus, it was clearly inferred, if not directly stated in the facts and exhibits, that the agreement with the Village, in all it's aspects, the property sale <u>and</u> the earlier suit's dismissal were the direct result of threats, oppression and scare tactics of the Village, or it's agents, and <u>not</u> the product of the intention or free will of Plaintiffs.

4.) Under Illinois law, a judgment by consent derives its validity from the parties and <u>not</u> from adjudication, being treated as a contract. <u>Village Of Mundelein v. Village Of Long Grove</u> (1991), 219 Ill. App. 3d 853, 580 N.E.2d 599, 605; see <u>Zboinsky v. Wojcik</u> (1952), 347 Ill. App. 226, 106 N.E. 2d 764, 766 (Judgment obligation as contract).

5.) The dismissal by a party of his own action, with prejudice, is in the nature of a "consent" judgment. <u>Barth v. Reagan</u> (1986), 146 Ill. App. 3d 1058, 497 N.E. 2d 519, 523.

6.) The general rule is that once a consent decree has been entered, it is binding upon the parties and cannot be set aside, <u>unless</u> it was the result of coercion, fraud, gross disparity

7

of the bargaining power between opposing parties or where the settlement contract is void as violating public policy, (In re Marriage of Nienhouse (2004), 355 Ill. App. 3d 146, 821 N.E.2d 1228, 1234, appeal denied); some or all of the above are implicated here and, if allowed, will be more clearly pled, upon amendment.

7.) Under the alleged facts and exhibits and the reasonable inferences, to be drawn therefrom, it cannot be said, as matter of law, that Plaintiff's could never state a claim upon which relief could be granted.

8.) The case filed previously was, just that, a filing, no litigation, per se, occurred, and the Plaintiffs' verily believe and aver, they were, in fact, deprived of their day in Court and should be given the opportunity to amend to state such, if such has not already been adequately stated, as was plaintiffs' intent upon the initial pleading.

9.) This Court also, while admitting upon P.9, of its Memorandum Opinion and Order, that additional allegations could have possibly demonstrated lack of a full and fair opportunity to litigate their claims in State Court, that Plaintiffs failed to provide authority for their assertion that the circumstances of this case did not demonstrate extreme duress as to dismissal below.

10.) Plaintiffs potentially and nearly certainly could supply such authority and should be given the opportunity to replead, to so allege.

11.) In any event, Plaintiffs' believed the duress was apparent from the sequence of events and the pled facts, circumstances, and exhibits, as a whole, in the original complaint.

12.) The complaint was intended to reveal wrongful governmental conduct as to the "enforcement by threats" agreement as to all of its particulars, including dismissal of the prior action.

13.) Plaintiffs should be allowed to replead to demonstrate they were in fear and deprived of free will in agreeing to all of the Village's terms and, that, thus, not only were they subject to duress, oppression, and, or fraud, but that in such circumstances the coerced action, including the consent to dismissal of the prior contract action, were and are null and void, both as to the sale of the shopping center and the forced dismissal. See Kaplan v. Keith (1978), 60 Ill. App. 3d 804, 377 N.E. 2d 279, 281 (coercive effect of pled threats may be inferred).

14.) Economic duress is present under Illinois law where one is deprived of the exercise of his free will by the wrongful act of another as to any contract. Resolution Trust Corp. v. Ruggiero (7th Cir. 1992), 977 F. 2d 309, 313-14.

15.) An agreement may be invalidated by duress where a party can demonstrate he was caused to act as he did, due to the wrongful threat or action of another and include acts wrong in the moral sense as well as otherwise wrongful, illegal, or tortious causing compulsory duress, as here, which can pled upon amendment, if not already apparent. Continental Ill. Nat. Bank & Trust Co. Of Chicago v. Stanley (N.D. Ill. 1985), 606 F. Supp. 558, 562.

16.) Duress constitutes a condition whereby a party is forced to act against his free will, ie; he has or had no choice. Seward v. B.O.C. Div. Of General Motors Corp. (N.D. Ill. 1992), 805 F. Supp. 623, 628.

17.) The three-pronged test to determine if duress is present, sufficient to void a contract is; (1) where there has been the wrongful act of another, (2) which conceivably induces the opposing party into a contract, (3) under circumstances depriving him of free choice. In re Dalip (N.D. Ill. 1996), 194 B.R. 597, 601.

18.) The presence of economic duress releases the oppressed party from the contract obligation upon the basis that the party benefiting therefrom has received an untoward advantage, the benefit of which he, in good conscience, should not be permitted to retain. Herget Nat. Bank Of Pekin v. Theede (1989), 181 Ill. App. 3d 1053, 537 N.E. 2d 1109, 1111, appeal denied.

19.) Wrongful use of much greater economic power may constitute duress to render an agreement void or voidable. Alexander v. Standard Oil Co. (1981), 97 Ill App. 3d 809, 423 N.E. 2d 578, 582-83; see also Wilicutts v. Galesburg Clinic Assn. (1990), 201 Ill. App. 3d 847, 560 N.E. 2d 1, 5, appeal denied.

20.) Actions under duress are considered to be the will of another for which the opposing actor should not be held responsible, it, thus, becoming the Court's duty to determine whether a contract or action is or was fairly and, or understandingly entered into and whether there is any indication of oppression, fraud, or other wrongful immoral activity. Brannen v. LaSalle Nat. Bank (1962), 18 Ill. 2d 116, 163 N.E. 2d 476, 478; People ex Rel. Carpenter v. Daniel Hamm Drayage (1959), 17 Ill. 2d 214, 161 N.E. 2d 181, 318 (actor not responsible for actions against his will); Plaintiff believes strongly there is such indication in the present circumstances.

21.) Accordingly, this Court erred and abused it's discretion in applying res judicata as a bar to the Federal action in this case and should in equity and good conscience vacate the dismissal order of March 9, 2010, reinstate the case on the docket and allow plaintiffs to file an amended complaint, in line with the plaintiffs proposed changes and, or deletions herein suggested as to such amendment, alternatively, res judicata should not apply to acts and damages occurring after September 2008, upon the basis of Fed. R.Civ. P.59,

6(c)(1), which would also allow an amendment and such other and further relief as is otherwise just and proper.

## D. ADDITIONAL CONSIDERATIONS

### I.     Plaintiffs' Pleading Themselves Out Of Court

1. While this Court referenced the Plaintiffs potentially pled themselves out of Court by the facts alleged, Plaintiffs chose not to appear deceptive by raising what would undoubtedly be raised by Defendants initially in any event, the question of whether the bar of <u>res judicata</u> would be applied, being undetermined at the time of pleading.

### II.     Page Limitation Issue

While this Court held the argument that defense briefs of maximum length, incorporating each other by reference, was frivolous as to the allegation that same violated the page limitation, Justice William R. Nash of the Illinois Appellate Court, 2nd Judicial District, held two 75 page briefs, incorporating each other by reference, did exactly that, violated the Illinois Supreme Court rule page limitation (75 pages non-printed) and struck said brief upon that basis, by administrative order, at which time the undersigned counsel was his Senior Appellate Clerk, so the issue is not without basis. If frivolous, there would be no limit to what any legal contestant could incorporate in his brief and the page limitation would mean essentially nothing.

### III.     Issue of Mayor's Individual Liability

1. The Court seemed to stress in its opinion that the allegation's as to the mayor's house purchase and favoring only the Thai restaurant with a Tif payment to move and her large city hall building expenditures were inadequate to keep her in as a defendant, individually

11

2. The point of the house being raised may be inadequately pled, in that, it was intended to show the pattern by when the mayor, Arlington Heights, and the Village's agents/defendants do business in that the house was on the market for sale at 2 million by the builder and the mayor, instead of going to buy it from him directly went to the Village Bank, when financed it, the bank then foreclosed on the house to obtain it and sold it to the mayor directly for 1.2 million, while the builder still owed 1.5 million on it, and thereafter the Village Bank got essentially all the Village's business for the favor and Brian Property's involvement obtained it essentially all the Village's real estate business, as the quid pro quo. This can be more clearly pled as to an amended complaint. All of the issues/allegations have evidentiary support.

Respectfully Submitted,

/s/ Joseph M. Williams
Joseph M. Williams

Joseph M. Williams
Attorney 3128789
810 Arlington Heights Road
Itasca, Il 60143
1.631.285.9800 ext. 232
1.630.346.4472 cell
1.630.285.9821 fax
JOSEPH9248@SBCGLOBAL.NET

12